UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JOHN RYAN, | |
| Plaintiff, | Case No. _____ |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| TRIPLE-S MANAGEMENT CORPORATION, STEPHEN L. ONDRA, ROBERTO GARCIA-RODRIGUEZ, GAIL B. MARCUS, ROBERTA HERMAN, LUIS A. CLAVELL-RODRIGUEZ, DAVID H. CHAFEY, JR., MANUEL FIGUEROA-COLLAZO, CARI M. DOMINGUEZ, and ROBERTO SANTA MARIA, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff John Ryan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Triple-S Management Corporation ("Triple-S" or the "Company") and the members of Triple-S's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Triple-S will be acquired by GuideWell Mutual Holding Corporation ("GuideWell") through GuideWell's subsidiary GuideWell Merger, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On August 24, 2021, Triple-S and GuideWell issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 23, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Triple-S stockholder will receive $36.00 in cash for each Triple-S share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $900 million.

3. On November 4, 2021, Triple-S filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Triple-S stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Triple-S management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman & Co. ("Goldman"); and (ii) Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Triple-S stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Triple-S's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Triple-S's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Triple-S.

9. Defendant Triple-S is a Puerto Rico corporation, with its principal executive offices located at 1441 F.D. Roosevelt Avenue, San Juan, Puerto Rico 00920. Triple-S, a health services company, serves more than one million customers in Puerto Rico. Triple-S's shares trade on the New York Stock Exchange under the ticker symbol "GTS."

10. Defendant Stephen L. Ondra ("Ondra") has been a director of the Company since 2020.

11. Defendant Roberto García-Rodríguez ("García-Rodríguez") has been President, Chief Executive Officer ("CEO"), and a director of the Company since January 2016.

12. Defendant Gail B. Marcus ("Marcus") has been a director of the Company since 2017.

13. Defendant Roberta Herman ("Herman") has been a director of the Company at all relevant times.

14. Defendant Luis A. Clavell-Rodríguez ("Clavell-Rodríguez") is Chair of the Board and has been a director of the Company since 2006.

15. Defendant David H. Chafey, Jr. ("Chafey") has been a director of the Company since 2013.

16. Defendant Manuel Figueroa-Collazo ("Figueroa-Collazo") has been a director of the Company since 2004.

17. Defendant Cari M. Dominguez ("Dominguez") is Vice Chair and Lead Independent Director of the Board, and has been a director of the Company since 2012.

18. Defendant Roberto Santa María ("Santa María") has been a director of the Company since 2015.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. GuideWell is a not-for-profit mutual holding company and the parent to a family of forward-thinking companies focused on transforming health care. The GuideWell organization includes Florida Blue, the leading health insurance company in Florida; GuideWell Health, a portfolio of clinical delivery organizations; GuideWell Venture Group, a portfolio of companies, including Onlife Health and PopHealthCare, focused on creating human-first and innovative health solutions for health plans; GuideWell Source, a provider of administrative services to state and federal health care programs; and WebTPA, a market leading administrator of self-funded

employer health plans. In total, GuideWell and its affiliated companies serve more than 45 million people in 45 states.

21.     Merger Sub is a Delaware corporation and wholly owned subsidiary of GuideWell.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22.     Triple-S is a health services company and one of the top players in the Puerto Rico health care industry. With more than 60 years of experience, Triple-S is the premier health care brand and serves more people through the most attractive provider networks on the island. The Company has the exclusive right to use the Blue Cross and Blue Shield ("BCBS") name and mark throughout Puerto Rico, the U.S. Virgin Islands, Costa Rica, the British Virgin Islands and Anguilla, and offers a broad portfolio of managed care and related products in the Commercial, Medicare Advantage and Medicaid markets. In the Commercial market, Triple-S offers products to corporate accounts, U.S. federal government employees, local government employees, individual accounts and Medicare Supplement. The Company also participates in the Government of Puerto Rico Health Insurance Plan, a government of Puerto Rico and U.S. federal government funded managed care program for the medically indigent that is similar to the Medicaid program in the U.S. Triple-S participates in the managed care market through its subsidiaries, Triple-S Salud, Inc. ("TSS"), Triple-S Advantage, Inc. ("TSA"), and Triple-S Blue, Inc. I.I. ("TSB"). TSS, TSA and TSB are BCBS licensees. As of December 31, 2020, the Company served approximately 979,000 managed care members across all regions of Puerto Rico.

23.     On August 5, 2021, the Company announced its second quarter 2021 financial results. Operating revenue was $1.0 billion, a 15.1% increase from the prior-year period, primarily reflecting higher Managed Care net premiums earned. Managed Care premiums earned were

$909.8 million, up 15.3% year-over-year. Medicare premiums earned were $408.4 million, an increase of 9.7% from the prior-year period. Medicaid premiums earned were $291.8 million, an increase of 32.0% from the prior-year period, primarily reflecting higher member months of approximately 256,000 and higher average premium rates following the premium rate increase effective July 2020. Reflecting on the results and looking to the future, defendant García-Rodríguez stated:

> We had another solid quarter and are pleased with our overall performance for the first half of 2021 as utilization trends fully normalize. We once again generated double-digit revenue growth year-over-year driven by our Medicaid offering and bolstered by another quarter of solid growth at our Life and P&C segments. We are also making steady progress on our integrated healthcare strategy, with plans to introduce team-based, integrated chronic care management programs in the next few months. We remain confident in our expectations for the full year and continue to deliver attractive products, high-quality care and superior service to our members.

**The Proposed Transaction**

24.     On August 24, 2021, Triple-S and GuideWell issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> JACKSONVILLE, Fla. and SAN JUAN, Puerto Rico, Aug. 24, 2021 /PRNewswire/ -- GuideWell Mutual Holding Corporation ("GuideWell"), a health solutions company and parent of Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"), and Triple-S Management Corporation ("Triple-S Management") (NYSE: GTS), a leading health care services company in Puerto Rico, today announced they will combine to transform the health care experience for their members in Florida and Puerto Rico.
>
> Under the terms of the definitive agreement, GuideWell will acquire all the outstanding shares of Triple-S Management common stock for $36.00 per share in cash, representing a premium of approximately 49% to Triple-S Management's 90-day volume-weighted average trading price. The transaction (the "Transaction") equity value is approximately $900 million. Upon completion of the Transaction, Triple-S Management will become a subsidiary of GuideWell and will continue to operate under the Triple-S Management brand. The agreement was unanimously approved by both companies' Boards of Directors.

The combination brings together industry leaders – and builds on the companies' complementary assets, cultures and strategic visions. GuideWell is a not-for-profit mutual holding company and the parent to a family of forward-thinking companies, including Florida Blue, that are focused on transforming health care. In total, GuideWell companies serve more than 45 million people in 45 states. Florida Blue is the oldest and largest health insurer in Florida, proudly serving more than 5 million members across all 67 counties in the state. Triple-S Management serves more than 1 million consumers in Puerto Rico, with a strong position in Medicare Advantage, a leading position in Puerto Rico Medicaid and commercial segments, and solid foundations in its Life and P&C segments.

The Transaction positions GuideWell, Florida Blue and Triple-S Management to better serve customers and members in a rapidly evolving environment. The combined entity will be a well-diversified leader, strongly positioned to compete effectively and invest substantially to drive improved health outcomes, access and affordability.

"The Transaction expands GuideWell's core insurance operations and positions Florida Blue and Triple-S Management for significant growth and meaningful value creation for the customers and communities we serve," said Pat Geraghty, president and chief executive officer of GuideWell and Florida Blue. "Florida Blue and Triple-S Management are both recognized for their high-quality, affordable health care and their actions deeply rooted in supporting community well-being. With Puerto Rico's outlook strengthening, and Florida experiencing fast-paced growth, especially in its Puerto Rican and Hispanic populations, this is a natural next step."

"Uniting our mission-driven, community-focused teams is a great outcome for our companies, as well as for Puerto Rico and Florida, and our shareholders," said Roberto Garcia-Rodriguez, president and chief executive officer of Triple-S Management. "We have long admired Florida Blue's locally focused approach to care, and we share their respect for the uniqueness of every community served. By partnering with a strong organization that shares our mission and approach, we will be well positioned to achieve our strategic goals, expand access and improve health care outcomes for all our members. The Transaction is also clearly in the best interests of our shareholders, given the strategic fit, the significant premium to our current share price and resulting shareholder liquidity."

The Transaction:

- **Builds on deep local expertise to address the unique needs of Florida Blue's and Triple-S Management's diverse customers, driving improved health outcomes, affordability, access and health equity**. Triple-S Management and Florida Blue will work together to launch culturally relevant solutions and improve key drivers of health. Triple-S Management's deep understanding of the Puerto Rican and Hispanic

- communities, its Spanish-speaking provider network and customer support, and its strong name and brand recognition in Puerto Rico will benefit Florida Blue as the Puerto Rican and Hispanic communities continue to experience fast-paced growth in Florida.

- **Accelerates GuideWell's and Triple-S Management's diversification and growth**.  GuideWell and Triple-S Management will leverage each other's capabilities and expertise to improve health care value for their respective customers.  For example, the Transaction will accelerate Florida Blue's growth in Medicare Advantage and across all lines of business in Florida's rapidly growing Puerto Rican and Hispanic populations.

- **Addresses affordability and enables increased investment**. As overall health care costs continue to rise, the companies' expanded scale and reach will enable them to address affordability and continue to invest in accessible, effective health solutions.

- **Drives immediate accretion and propels long-term growth through scale advantages**. GuideWell expects the Transaction to be immediately accretive.  The Transaction will create a leading provider of Medicare in the United States, enabling Florida Blue and Triple-S Management to better compete against other insurers in Florida and Puerto Rico.

**Transaction Details**

The Transaction will be completed through a merger of a newly created subsidiary of GuideWell with and into Triple-S Management, with Triple-S Management as the surviving corporation.  Following completion of the Transaction, Triple-S Management will operate as a wholly owned subsidiary of GuideWell and will continue to be led by its current management team while operating under the Triple-S Management brand.  Triple-S Management's providers, members and community partners will continue to work with the Triple-S Management staff they know and trust.

The Transaction is expected to close in the first half of 2022, subject to satisfaction of normal closing conditions, including customary state and federal regulatory review and approval as well as approval by Triple-S Management shareholders.

**Advisors**
J.P. Morgan Securities LLC is serving as exclusive financial advisor to GuideWell, and Cravath, Swaine & Moore LLP is serving as legal counsel.  Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Triple-S Management, and Davis Polk & Wardell LLP is serving as legal counsel.

**Insiders' Interests in the Proposed Transaction**

25.     Triple-S insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Triple-S.

26.     Notably, Triple-S insiders stand to reap substantial financial benefits for securing the deal with GuideWell.  In connection with the merger, Triple-S intends to establish a cash retention program under which it will grant retention bonuses to each executive officer (other than Triple-S's CEO, President of Triple-S Vida, Inc. and executive officers who are not named executive officers) in an amount between a minimum of $200,000 and a maximum equal to the sum of two (2) times the executive officer's base salary and one times his or her target short-term incentive opportunity, subject to the executive officer's continued employment through the applicable payment date.  The President of Triple-S Vida, Inc. is eligible for a retention bonus in the amount of $200,000.

27.     Moreover, if they are terminated in connection with the Proposed Transaction, the estimated aggregate amounts of the payments to be provided to Triple-S's seven executive officers who are not named executive officers under the severance arrangements and retention arrangements upon a qualifying termination of employment are $5,973,470 and $4,792,850, respectively.

28.     Further, if they are terminated in connection with the Proposed Transaction, Triple-S's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Roberto García-Rodríguez, President and Chief Executive Officer | 2,935,350 | 10,594,296 | 28,201 | 13,557,847 |
| Juan J. Román-Jiménez, Executive Vice President and Chief Financial Officer | — | 1,598,832 | — | 1,598,832 |
| Madeline Hernández-Urquiza, Executive Vice President and Chief Operating Officer | — | 4,433,076 | — | 4,433,076 |
| José E. Novoa-Loyola, Chief Medical Officer of Triple-S Salud, Inc. | 1,107,000 | 2,064,276 | — | 3,171,276 |
| Arturo L. Carrión-Crespo, President of Triple-S Vida, Inc. | 1,010,761 | 1,871,964 | — | 2,882,725 |

**The Proxy Statement Contains Material Misstatements and Omissions**

29. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Triple-S's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Triple-S's financial projections and the data and inputs underlying the financial analyses performed by the Company's financial advisor Goldman; and (ii) Company insiders' potential conflicts of interest. Accordingly, Triple-S stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning Triple-S's Financial Projections and Goldman's Financial Analyses*

31. The Proxy Statement fails to disclose material information concerning the Company's financial projections.

32. For example, the Proxy Statement sets forth that in connection with rendering its fairness opinion, Goldman reviewed, among other things, "certain analyses prepared by the management of Triple-S related to the expected impact of certain tax attributes of Triple-S, as approved for Goldman Sachs' use by Triple-S, referred to in this section as the "Tax Attributes". . . ." Proxy Statement at 43. The Proxy Statement, however, fails to disclose the Tax Attributes prepared by Triple-S management.

33. Additionally, the Proxy Statement fails to disclose all line items underlying the Company's financial projections.

34. The Proxy Statement also describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Triple-S's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Triple-S's stockholders.

35. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal year estimate of the Company's EBITDA; (ii) quantification of the terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.5%; (iv) Triple-S's future tax benefits; and (v) the total number of fully diluted shares outstanding as of August 19, 2021.

36. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the Tax Attributes used in the analysis; and (ii) quantification of the inputs and assumptions underlying the discount rate of 10.2%.

37. With respect to Goldman's *Premia Paid Analysis*, the Proxy Statement fails to: (i) identify the transactions observed; and (ii) disclose the individual premia for each transaction.

38. The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Triple-S's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

39. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Triple-S insiders.

40. The Proxy Statement fails to disclose whether any of Triple-S's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between GuideWell and Triple-S's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of GuideWell's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

41. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Triple-S's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Triple-

S will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the inputs and assumptions underlying Goldman's financial analyses, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Triple-S within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Triple-S, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Triple-S stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Triple-S, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Triple-S stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 23, 2021           **WEISSLAW LLP**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*